

DLA Piper LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
www.dlapiper.com

Jessica Ann Masella
jessica.masella@dlapiper.com
T  212.335.4829

November 11, 2020

*Via* ECF

Honorable Victor Marrero
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   *United States v. Gzimi Bojkovic*, 18-CR-00767 (VM-2)

Dear Judge Marrero:

We represent Gzimi Bojkovic, the defendant, and we submit this letter in connection with his sentencing, which is scheduled for November 17, 2020, at 12:00 p.m.

Before his arrest in the instant case, Mr. Bojkovic had not spent one day in prison. As of his sentencing, he will have spent 16 months at the Metropolitan Detention Center ("MDC") under uniquely difficult conditions. While housed in the MDC, Mr. Bojkovic experienced a weeklong shutdown in the winter of 2019 (during which inmates went without adequate heat, hot food, and any social or legal visits) and the Covid-19 pandemic (during which inmates have been substantially locked down in their cells and, for many months, without access to social or legal visits). Under these treacherous conditions, Mr. Bojkovic has reckoned with the mistakes of his past to envision a different future. His own words to the Court say it best:

> At the Mdc and [in] this [Covid]-19 pandemic[,] being locked down 21 hrs a day can really break a person like me down and it did. This horrible experience made me realize that crime isn't the way to go in life. . . . I'm looking forward and plan on opening up my own construction company. . . . [It is] my clear intention to move forward in life in a rewarding and honest manner despite the shame and disgrace that I have caused my family.

(Ex. 1 (Letter from Gzimi Bojkovic)).

Mr. Bojkovic is not the same man that he was on the day of his arrest (in October 2018), nor during the time when he committed the instant offense (which ended in March 2017). In the several years that have passed, Mr. Bojkovic has proved his commitment to leading a productive life. Among other things, he has been a dependable employee (both in the MDC and while out on bail), he has received the highest praise from his work supervisors in the MDC, he has maintained strong relationships with his family, and he has availed himself of opportunities to pursue education and vocational training.



Mr. Bojkovic has chosen to accept responsibility for what he acknowledges was a serious offense, burglarizing jewelry stores. He did so as an essential part of the process for him to move forward with his life. He also expresses remorse to those who were financially hurt by his crimes, including victim store owners, and he has apologized to them and to his family. Mr. Bojkovic, who for a time was out on bail in this case, chose to surrender himself back into custody at the MDC—as part of a process to accept responsibility, move forward, and put his crime behind him.

In addition, Mr. Bojkovic has a tight-knit network of family and friends who are committed to supporting his transition after his release. Unlike many other defendants who come before this Court, Mr. Bojkovic has a family that has already demonstrated its commitment to standing by him. In particular, Mr. Bojkovic is fortunate to have loving parents and older sisters—all of whom lead stable lives and who have already provided him with critical support during the pendency of this case. His supporters extend beyond family, and over a dozen people total have written letters describing his good character and potential to do better. (*See* Exs. 2-19). Mr. Bojkovic also has a standing offer to resume local employment at a restaurant while planning his path ahead. Thus, Mr. Bojkovic stands a promising chance of fulfilling his intention to move forward with his life in a productive and law-abiding manner.

For these reasons and as set forth in more detail below, we respectfully request that the Court impose a sentence of time served for Mr. Bojkovic, to be followed by a term of supervised release. This would be consistent with the goals of sentencing, by providing adequate punishment and deterrence, and thus being "sufficient, but not greater than necessary." The term of imprisonment already served by Mr. Bojkovic in this case—16 months under extreme conditions—is substantial, especially given that Mr. Bojkovic had never previously served a day in prison. Any lengthy term of additional imprisonment would not serve a constructive purpose for Mr. Bojkovic or the public. We make this sentencing request recognizing that the Court may view it as significantly below the Guidelines range. But we ask the Court to consider that this is a unique case, that Mr. Bojkovic is a unique defendant, and that these are unique times. In particular, given that this is essentially a first-time offense for Mr. Bojkovic, that his crime involved no weapons and no violence to any persons, that several years have passed since the conduct—during which Mr. Bojkovic has demonstrated his commitment to leading a better life—and that the time he has already spent at the MDC has been under unduly punitive conditions, we assert that a sentence of time served is the appropriate one here.

### Gzimi Bojkovic's Background

Gzimi Bojkovic is now 38 years old and has always lived in New York City. (PSR ¶ 99). He is lucky to have a close-knit immediate family. He was raised by his father, Ganija Bojkovic, now a 70-year-old retired train foreman, and mother, Hazize Bojkovic, now a 67-year-old retired



porter. (PSR ¶ 100). The youngest of four children, Mr. Bojkovic was often cared for by his three older sisters—Spresa, Shemsije, and Nebije—while his parents were at work. (PSR ¶¶ 99-100). Today, all of Mr. Bojkovic's sisters remain nearby in New York City, where Spresa and Shemsije work as hair stylists, and Nebije recently worked at fitness studios. (*Id.*).

Mr. Bojkovic attended high school until the 11th grade. (PSR ¶ 115). As a teenager, he began consuming alcohol and smoking marijuana. (PSR ¶¶ 111-12). Though Mr. Bojkovic decreased his alcohol use later in life, he has struggled with marijuana addiction for many years and has not participated in a substance abuse treatment program. (*See* PSR ¶¶ 111-14). Mr. Bojkovic's addiction led to several criminal violations relating to the possession of personal use quantities of marijuana, which resulted in a fine and a sentence of time served for a few hours spent in jail. (PSR ¶¶ 91, 93).

Mr. Bojkovic has a demonstrated history of lawful employment. For over a decade, Mr. Bojkovic worked in various construction and laboring jobs. (PSR ¶¶ 123-28). He is skilled in painting and floor installation, the latter of which he learned from a local union. (PSR ¶ 118). Mr. Bojkovic successfully completed various vocational training courses, including a 30-hour OSHA course, a 32-hour supported scaffold installer and remover course, and a four-hour certified flagger course. (*Id.*).

During the eight months that he was on pretrial release in connection with this case (before his voluntary remand on November 12, 2019), Mr. Bojkovic worked part-time at a Staten Island pizzeria restaurant, with responsibilities for the counter and deliveries. (PSR ¶¶ 121-22). Mr. Bojkovic's manager at the restaurant said that he would be welcome to return upon release. (Ex. 18 (Letter from Augusto Mandara)). Over the same period, Mr. Bojkovic consistently applied for full-time work, but was unable to attain the construction jobs he had previously held due to the pendency of this case.

During his 16 months of detention at the MDC, Mr. Bojkovic has maintained and excelled in employment. Mr. Bojkovic has worked in the kitchen for the entire period, earning praise from supervisors for his work ethic and teamwork. (*See* Ex. 19 (Letters from MDC Supervisors)). Mr. Bojkovic's work there is ranked as "outstanding"—the highest available mark—in nearly all categories. (*Id.*). Supervisors applaud his leadership skills, dependability, and good attitude, noting that Mr. Bojkovic is "always willing" to help. (*Id.* at 1, 4). Due to his exemplary job performance, Mr. Bojkovic has even been tasked with training others. (*Id.* at 1). It would not be an overstatement to conclude that Mr. Bojkovic could not receive higher praise for his work within the MDC. We respectfully submit that this commitment and hard work is emblematic of Mr. Bojkovic's desire to follow an honest life.



In addition to seeking out and maintaining employment, Mr. Bojkovic has been a great help to his family. His aging parents describe him as a "caring" and "sensitive person," who assists them with yard work, groceries, and cleaning. (Ex. 2 (Letter from Ganija & Hazize Bojkovic)). This type of devotion has been steadfast, and his parents say they are especially grateful for how Mr. Bojkovic attended to his mother after her stroke a few years ago. (*Id.*).

Mr. Bojkovic's ties with his family members have remained strong. (PSR ¶ 101). While Mr. Bojkovic was on pretrial release, he lived in his childhood home with his parents, who provided moral and financial support. While detained at the MDC, Mr. Bojkovic's family had visited him on a weekly basis—at least until social visits were eliminated at the onset of the pandemic. Ever since, Mr. Bojkovic's family has attempted to keep in close contact with him by telephone and email, but those services have been erratic. (Ex. 6 (Letter from Shemsije Bojkovic & Family)). Mr. Bojkovic plans to return to his parents' house upon his release, and his parents have offered to support him as he adapts to living and working outside of the MDC. (PSR ¶ 103).

<u>Gzimi Bojkovic's Guilty Plea and Self-Surrender</u>

In October 2018, Mr. Bojkovic and three other individuals were charged with a conspiracy to violate federal racketeering laws, stemming from burglaries and the interstate transport and sale of stolen goods between 2006 and 2017. (*See* PSR ¶¶ 1-4). On October 27, 2019, pursuant to a plea agreement, Mr. Bojkovic pleaded guilty to racketeering conspiracy, and he admitted to participating in five burglaries that occurred between 2008 and 2017. (*See* PSR ¶ 6).

There are no allegations that Mr. Bojkovic or any of the other participants in the burglaries used weapons or violence against any persons in connection with the conduct. Instead, the facts make clear that the burglaries were planned to occur when the premises were closed and no persons were present. There is no mandatory minimum sentence applicable to Mr. Bojkovic, and the agreed-upon Guidelines range is 51-63 months' imprisonment.

After his arrest in this case, Mr. Bojkovic chose to accept responsibility for his actions and to plead guilty for his crime. He did so at a relatively early stage in the case and before the Court had set a trial date. He decided to come forward as the first step toward acknowledging his wrongdoing and choosing a better path for his future. In connection with his plea and sentencing, he has apologized to the victims of his crime and has expressed his remorse for his actions.



In addition, after his guilty plea, Mr. Bojkovic—who had been on bail and residing with his parents—chose to surrender himself into custody.[1]  He did so because he felt that serving time toward his sentence was another step forward in moving on with his life and putting the mistakes of his past behind him.  As set forth in more detail below, Mr. Bojkovic used his time in the MDC to pursue employment and to maintain a productive life there, as best he could under the conditions.

<u>Gzimi Bojkovic's Custody at the MDC and Time on Bail</u>

Due to a power outage and the Covid-19 pandemic, the 16 months total that Mr. Bojkovic has spent in custody at the MDC have been fundamentally different from all norms.  This Court is all too aware that the MDC is far from ideal during the best of times.  Yet inmates who have been detained at the MDC during the past year and a half, like Mr. Bojkovic, have experienced harsh conditions that are unprecedented.  Despite the challenges of prolonged isolation—imposed not because of any behavioral issues, but due to environmental forces not of his making—Mr. Bojkovic has remained positive and productive.  He maintained employment, completed self-improvement coursework, and nurtured family relationships as best he could from afar.  Mr. Bojkovic is an exemplary inmate who shows promise for leading a law-abiding life upon release.

Mr. Bojkovic's custody at the MDC happened in two segments.  After his arrest in this case, he was in custody there between October 24, 2018, and his release on bail on February 27, 2019.  (PSR at 1).  Even though there are limits to the programming available at the MDC, Mr. Bojkovic used this initial time to take a commercial driver's license preparation course, as well as personal wellness and relaxation courses.  (Ex. 19, at 6 (MDC transcript)).  Mr. Bojkovic also began working in the MDC kitchen, where supervisors said he "distinguished himself" and "often stepped forward to cover the shifts of other missing personnel."  (Ex. 19, at 1 (Letters from MDC Supervisors)).

Unfortunately, just as winter temperatures dropped into the single digits during late January 2019, the MDC experienced an electrical fire that led to a weeklong power outage.  (*See, e.g.*, *"It's Cold as Hell": Inside a Brooklyn Jail's Weeklong Collapse*, N.Y. TIMES (Feb. 9, 2019), https://www.nytimes.com/2019/02/09/nyregion/brooklyn-jail-no-heat-inmates.html).  As was widely reported, MDC detainees were locked in their cells and "spen[t] the coldest days of winter in darkness, largely without heat and hot water."  (*Id.*).  Mr. Bojkovic was among the detainees subjected to this inhumane treatment.

---

[1] The PSR notes that Mr. Bojkovic's surrender was pursuant to an "order of the Court." (PSR at 1).  That is technically correct, but the Court entered the order because Mr. Bojkovic requested that he be permitted to surrender himself into custody.



Following that ordeal, on February 27, 2019, Mr. Bojkovic was released on bail. (PSR at 1). During the months to follow, he proved that custody had not wreaked irreversible damage. To the contrary, Mr. Bojkovic capably reentered society and continued his personal evolution. While living with his parents, he took construction courses and obtained online certifications. (Ex. 2, at 2 (Letter from Ganija & Hazize Bojkovic)). Mr. Bojkovic also worked at a pizzeria restaurant, with his manager describing him as a "very respectful" and "dependable" employee who is welcome to "come any time to work" following his release. (Ex. 18 (Letter from Augusto Mandara)).

After pleading guilty on October 7, 2019, Mr. Bojkovic decided that he wanted to resume serving time—in order to reckon with his past and then put it behind him as quickly as possible. On November 12, 2019, he voluntarily surrendered to detention pending sentencing. (PSR at 1). Of course, neither the world nor Mr. Bojkovic had any inkling of the difficulties that would follow just a few months later due to the Covid-19 pandemic.

For months since special pandemic-related restrictions began during March 2020, Mr. Bojkovic's family has been unable to visit him in-person, and his telephone and email access has been unreliable. (Ex. 6 (Letter from Shemsije Bojkovic & Family)). There were no in-person legal visits allowed from March to September 2020. Since the pandemic, inmates have been locked in their cells for most of each day. These circumstances caused Mr. Bojkovic and his family great distress, and his family laments that "[t]he comfort of closeness and relief that we would feel when we could visit Gzimi has been taken away from him and us." (*Id.*). Despite this struggle, Mr. Bojkovic has cultivated a positive outlook, envisioning a life after release where he can rejoin his family and work toward starting his own construction company—based on his extensive experience in construction trades. (*Id.*).

Gzimi Bojkovic's Plan for Release

Mr. Bojkovic is committed to continuing the progress he has made over the past two years. During this time, he has been steadily employed and has earned glowing reviews from supervisors. Mr. Bojkovic looks forward to seeking and maintaining work upon release and, helpfully, has a standing offer to resume local employment. (Ex. 16 (Letter from Augusto Mandara)). In the longer term, Mr. Bojkovic has ambitions of building upon his decade of experience in construction, and desires to start his own company. (Ex. 1 (Letter from Gzimi Bojkovic)).

As mentioned, Mr. Bojkovic's connections with his family remain strong. His parents and each of his three sisters have written letters describing their support for him. In his own words, Mr. Bojkovic regrets the "shame and disgrace" that he has caused his family, and wants to prove to them that he is reformed. (Ex. 1 (Letter from Gzimi Bojkovic)). His parents write that although



their son "is not perfect," they believe he is fundamentally a "good human being," and pledge to "continue to provide support for him during this difficult time in his life." (Ex. 2, at 2 (Letter from Ganija & Hazize Bojkovic)). Mr. Bojkovic's oldest sister, Spresa, emphasizes that he is a caring, playful, and much-missed uncle to her children, and she wants to be part of the familial "love and support" network following his release. (Ex. 3 (Letter from Spresa Bojkovic)). The middle sister, Shemsije, shares and reinforces this message, adding that Mr. Bojkovic has expressed deep remorse and focused on turning his life around. (Ex. 4 (Letter from Shemsije Bojkovic)). The youngest sister, Nebije, "pray[s] for his safety" and asks the Court to be merciful during sentencing. (Ex. 5 (Letter from Nebije Bojkovic)). Together, these letters make clear that Mr. Bojkovic's commitment to do better by his family and their responding vow to help him will mutually reinforce his ability to transition into a lawful and productive life upon release.

The numerous other letters from extended family and friends submitted in support of Mr. Bojkovic also speak volumes. A cousin, Ned Cejaj, writes that Mr. Bojkovic "has the capability to learn from his mistakes," and can use this as "a positive opportunity to grow." (Ex. 8 (Letter from Ned Cejaj)). A longstanding friend recalls Mr. Bojkovic's other positive attributes, including how he would "help elders in the neighborhood with painting their houses and some maintenance work." (Ex. 10 (Letter from Briana Garaventa)). Another friend, who lost "everything" during Hurricane Sandy, remembers with gratitude how Gzimi took him shopping for clothes and gave him money to eat. (Ex. 13 (Letter from Paul Williams)). All of these letters describe Mr. Bojkovic as an individual with many redeeming qualities and as a person who has had a positive impact on others. These letters demonstrate that, despite his troubled past, Mr. Bojkovic has the character to do better upon his release.

The Court is all too familiar with the many criminal defendants who arrive at sentencing with little or no support system. Mr. Bojkovic, in contrast, has a stable network of family and friends, who are committed to providing him moral and financial support; he has a place to live; he has an offer of employment; he has training and skills from prior jobs; he has connections to his local community that will allow him to seek and maintain work; he has a demonstrated work ethic; and he has the motivation and drive to do better. In short, the Court should have every reason for confidence that Mr. Bojkovic will succeed in seeking and maintaining a productive and law-abiding life after his release.

## The Appropriate Sentence

When sentencing an individual, a court is required to determine how best to comply with the primary directive of the Sentencing Reform Act: to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. *See* 18 U.S.C. § 3553(a). In making this determination, courts should look beyond the advisory Guidelines range, as it must



weigh all of the § 3553(a) factors. *Kimbrough v. United States*, 552 U.S. 85, 90-91 (2007); *Booker v. United States*, 543 U.S. 220, 245 (2005). That statute "permits the court to tailor the sentence" in light of other considerations. *Kimbrough*, 552 U.S. at 87 (quoting *Booker*, 543 U.S. at 245); *see also Gall v. United States*, 552 U.S. 38, 46-50 (2007).

Here, a sentence of time served, to be followed by a term of supervised release, is "sufficient, but not greater than necessary," to comply with the sentencing purposes in § 3553(a). Such a sentence would accomplish the twin goals of adequate punishment and deterrence for Mr. Bojkovic. A lengthy additional sentence at or near the Guidelines range would not be constructive. The time already served by Mr. Bojkovic—including under the very difficult conditions described above—is already an extremely significant one. This is especially true taking into consideration that, before the instant case, he had never served a single day in prison. Mr. Bojkovic's own words reflecting on his experience, combined with his demonstrated commitment to maintaining and excelling at employment and seeking out vocational training and education, make clear that his incarceration has already had a profound and transformative effect on him. Thus, a sentence of time served will accomplish the sentencing goals of punishment and deterrence.

In addition to time served, if the Court imposes a sentence including supervised release, this component would give Mr. Bojkovic adequate structure to continue his path toward living a law-abiding and productive life—which he has already initiated during his 16 uniquely difficult months in the MDC.

A sentence of time served for Mr. Bojkovic would also adequately address the need "to provide just punishment" while reflecting the relative culpability of other participants in the instant offense. 18 U.S.C. § 3553(a). In the scope of this racketeering conspiracy, Mr. Bojkovic's role was less than that of some others. Mr. Bojkovic was not a leader and was not personally involved in perhaps the most serious incident in the superseding indictment, which was a burglary and related attempt to take €10 million in gold from a German workshop. (*See* ECF No. 18, at ¶ 7.c). A non-leader co-defendant who was personally involved in that incident, Elvis Cirikovic—who notably had a lengthy preexisting criminal history and who committed burglaries *while on pretrial release and probation*—received a sentence of 27 months in this case. (*See* ECF No. 84, at 2, 6). Given this point of comparison, a below-Guidelines sentence for Mr. Bojkovic—who has no criminal history aside from the personal use of marijuana—would reflect the seriousness of his offense, while at the same time recognizing his lesser role and yielding a just outcome.

This Court must also consider the sentencing goals of punishment and deterrence, both specific and general. Here, Mr. Bojkovic has already served 16 months in federal custody for his role in this criminal conduct. We respectfully submit that this first-time sentence, served under



unprecedented conditions, has already achieved the goals of punishment and deterrence. Mr. Bojkovic writes that "being locked down 21 hrs a day can really break a person like me down and it did. This horrible experience made me realize that crime isn't the way to go in life." (Ex. 1 (Letter from Gzimi Bojkovic)). Mr. Bojkovic's personal growth and positive choices made while at the MDC demonstrate his commitment to rehabilitating himself. Thus, we submit that to the extent that the twin goals of punishment and deterrence have already been accomplished.

## Conclusion

Unlike many defendants who come before this Court, Mr. Bojkovic has already demonstrated that he has matured and changed since the time of his arrest and since his involvement in the instant crime. Unlike many others, he comes before this Court with a demonstrated track record for seeking and maintaining employment, for earning the highest praise from his work supervisors, for maintaining positive and strong ties with his family, and for having created a plan for his release that is realistic and will be likely to result in his successful transition to life after his release. No constructive purpose would be served by sentencing Mr. Bojkovic to any additional time in prison; that is especially true during these uniquely challenging times when the MDC (and other jails) cannot offer inmates a fuller complement of rehabilitative programs and instead keep them locked down for much of the day. To the extent that the Court believes that an additional period of incarceration is warranted, we request that the Court impose a sentence of home incarceration. Mr. Bojkovic wants the Court to know that while he "can't take back his serious mistakes," he is "determined to move forward in [his] life." (Ex. 1 (Letter from Gzimi Bojkovic)). This will best be done by imposing a sentence with no additional imprisonment time and a structured period of supervised release to follow.

Respectfully submitted,

DLA Piper LLP (US)

Jessica A. Masella, Partner

John M. Hillebrecht, Partner

*Counsel for Defendant Gzimi Bojkovic*

cc: All Counsel of Record (via ECF)

# Exhibit List

| No. | Letter from: |
|---|---|
| 1. | Gzimi Bojkovic |
| 2. | Ganija & Hazize Bojkovic (Mr. Bojkovic's parents) |
| 3. | Spresa Bojkovic (Mr. Bojkovic's sister) |
| 4. | Shemsije Bojkovic (Mr. Bojkovic's sister) |
| 5. | Nebije Bojkovic (Mr. Bojkovic's sister) |
| 6. | The Immediate Bojkovic Family (Collectively, Post-Pandemic) |
| 7. | Eso Bojku (Mr. Bojkovic's cousin) |
| 8. | Ned Cejaj (Mr. Bojkovic's cousin) |
| 9. | Dena Morris (Mr. Bojkovic's friend) |
| 10. | Briana Garaventa (Mr. Bojkovic's friend) |
| 11. | Joseph Emilio (Mr. Bojkovic's friend) |
| 12. | Deanna Celiberti (Mr. Bojkovic's friend) |
| 13. | Paul Williams (Mr. Bojkovic's friend) |
| 14. | Lawrence Valentin (Mr. Bojkovic's friend) |
| 15. | Dino Tafa (Mr. Bojkovic's friend) |
| 16. | Alexandra Arguedas (Mr. Bojkovic's friend) |
| 17. | Husnija Celic (Mr. Bojkovic's brother-in-law) |
| 18. | Augusto Mandara (Mr. Bojkovic's employer) |
| 19. | MDC Supervisors, Plus MDC Transcript |